**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| **Great American Assurance Company,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **CIVIL ACTION FILE NO:** |
| **v.** ) | **1:18-cv-04974-SDG** |
| ) | |
| **Braddy Preparatory Academy, Inc.,** ) | |
| ) | |
| **Defendant,** ) | |
| ) | |
| **v.** ) | |
| ) | |
| **Powers-Leavitt Insurance** ) | |
| **Agency, Inc.,** ) | |
| ) | |
| **Third-Party Defendant.** ) | |

## GREAT AMERICAN ASSURANCE COMPANY'S STATEMENT OF MATERIAL FACTS AS TO WHICH NO GENUINE ISSUES REMAIN FOR TRIAL

Pursuant to Local Rule 56 of the Civil Local Rules for the United States District Court for the Northern District of Georgia, Plaintiff Great American Assurance Company ("Great American") files this Statement of Material Facts As To Which No Genuine Issues Remain For Trial in support of its Motion for Summary Judgment.

1

1.

Great American issued Commercial Policy, No. PAC 066-23-14 - 04 ("the Policy"), through its Specialty Human Services ("SHS") Division to Defendant Braddy Preparatory Academy, Inc. ("Braddy Prep"), effective January 22, 2018 to January 22, 2019, insuring a K through 12 fully accredited education academy located in Atlanta, Georgia. (Doc. 1-1, Policy, Page 15; Exhibit A, Page 16, Lines 10 - 11).

2.

On April 1, 2018, Braddy Prep was granted a license to use certain real property located contiguously at 2605 and 2640 Ben Hill Road and 2517 Dodson Drive in East Point, Georgia ("the East Point Campus") to operate a private school. (Exhibit 92 of Exhibit B; Exhibit B, Page 1).

3.

Under the terms of the license, Braddy Prep was required to maintain insurance coverages on the East Point Campus, including commercial and liability coverage. (Exhibit 92 of Exhibit B; Exhibit B, Pages 4, 12 - 14).

2

4.

Ms. Lorraine Brooks, the director of finance and administration with Education System Management, was tasked with obtaining insurance for the East Point Campus for Braddy Prep. (Exhibit C, Page 9, Lines 5 – 6, Page 27, Lines 19 - 25; Exhibit D, Page 114, Lines 7 - 11).

5.

On March 29, 2018, Ms. Brooks contacted Braddy Prep's insurance broker, Gizela Evans of Powers-Leavitt Insurance Agency, Inc. ("Powers-Leavitt") regarding insurance for the East Point Campus. According to the Broker Agreement, Powers-Leavitt was "an independent contractor acting on behalf of [Braddy Prep]" with "no authority to accept any risk for [Great American] or bind [Great American] in any manner. (Exhibit 23 of Exhibit E; Exhibit E, Page 12, Lines 13 – 25, Page 13, Lines 1 - 9; Exhibit 69 of Exhibit H, Page 1).

6.

Ms. Brooks advised Ms. Evans that Braddy Prep was moving to the East Point Campus from its previous location. (Exhibit 23 of Exhibit E; Exhibit E, Pages 12, Lines 22 – 15, Page 13, Lines 1 - 4).

7.

On April 2, 2018, Ms. Brooks provided Ms. Evans with information regarding the insurance coverage Braddy Prep was required to maintain pursuant to the terms of the license. (Exhibit 36 of Exhibit E, Pages 2 - 3).

8.

In response, Ms. Evans requested, among other things, the address that Braddy Prep was occupying at East Point Campus. (Exhibit 36 of Exhibit E, Page 2).

9.

In response to Ms. Evans' request, Ms. Brooks sent Ms. Evans a list of buildings and addresses under the heading "Building Occupying", which included the Library, the Administration Building (a/k/a Burns Hall), the Main Building (a/k/a Old Main), the Gymnasium (all which she advised Braddy Prep would be occupying in April 2018), located at 2605 Ben Hill Road and 2531 Dodson Drive, East Point.  (Exhibit 4 of Exhibit C; Exhibit C, Page 61, Lines 1 - 6).

10.

4

On April 2, 2018, Ms. Evans forwarded that list to Great American as part of a Policy Change Request. (Exhibit E, Page 22, Lines 11 - 24; Exhibit 26 of Exhibit E; Exhibit K, ¶ 4).

11.

On April 2, 2018, Ms. Evans began submitting a series of Policy Change Requests to Great American which initiated the process of seeking coverage for the new East Point Campus by requesting the addition of the following locations and buildings: 2531 Dodson Drive, East Point, Ga 30344,, 2605 Ben Hill Road, East Point, Georgia,, the Gymnasium, the Administration Building, the School Building a/k/a the Main Building/Old Main, and the Library (Exhibit 27 of Exhibit E, Pages 1 - 5; Exhibit E, Page 25, Lines 13 - 15).

12.

The April 2, 2018 Policy Change Request made specific representations regarding the use and occupancy of the East Point Campus. (Exhibit 27 of Exhibit E, Pages 1 – 5; Exhibit K, ¶ 3).

13.

The first page of the April 2, 2018 Policy Change Request contained the following representation: "Can you add blanket BPP to Location 2 & 3 since they will be occupying these building for the school?" (Exhibit 27 of Exhibit E, Page 1).

14.

The last page of the April 2, 2018 Policy Change Request contained the following representation by Ms. Evans: "can you add blanket BPP to Location 2 since they are using all these buildings?" (Exhibit 27 of Exhibit E, Page 5). Simultaneously, Braddy Prep canceled coverage for another location at 1706 Washington Ave., which was also consistent with moving a school to the East Point Campus. (Exhibit 27 of Exhibit E, p. 1).

15.

The April 2, 2018 Policy Change Request was received by Kyle Cozatchy, an underwriting manager with Great American's Specialty Human Services. ("SHS") Division. (Exhibit G, Page 10, Line 8 – 22, Page 14, Lines 1 - 5).

16.

Based on the representations and information in the April 2, 2018 Policy Change Request, Mr. Cozatchy was led to believe that the new locations and

6

buildings that Braddy Prep was requesting to be added to the Policy were occupied, in use as a school, and there was no information to suggest they were not in use as a school or vacant. (Exhibit G, Page 22, Lines 24 – 25, Page 23, Lines 1 – 9, 21 – 25, Page 24, Lines 1 – 4, 13 – 25, Page 25, Lines 1 – 5; Exhibit K, ¶ 6).

17.

The Policy Change Request affirmatively represented that the East Point Campus was being occupied and used as a school, so it was not necessary for Mr. Cozatchy to question Braddy Prep's agent, Ms. Evans, further regarding the occupancy and use as a school or to determine if the East Point Campus was vacant. (Exhibit H, Page 32, Lines 11 - 22; Exhibit G, Page 26, Lines 13 – 19, Page 29, Lines 3 - 14).

18.

The April 2, 2018 Policy Change Request was not at the inception of coverage, but was a mid-term request by an existing insured, and consequently, there was no requirement for Braddy Prep to complete a questionnaire at the time, nor would it have been a common practice and procedure for SHS. (Exhibit H, Pages 26, Lines 13 – 17, Page 56, Lines 2 - 11).

19.

In reliance on the representations made by Ms. Evans, Mr. Cozatchy approved the April 2, 2018 Policy Change Request. (Exhibit G, Page 21, Lines 1 – 2; Exhibit K, ¶ 9).

20.

On April 27, 2018, Ms. Brooks contacted Ms. Evans continuing to fashion insurance for the East Point Campus as required by Braddy Prep's lease, which was to begin on May 4, 2018. Under the terms of the lease, as with the license, Braddy Prep was to use the East Point Campus as a private school. (Exhibit 92 of Exhibit B, Page 1; Exhibit 40 of Exhibit E, Pages 1 - 2; Exhibit 1 of Exhibit C, Pages 1, 27).

21.

In conjunction with her actions to fashion insurance for the East Point Campus, Ms. Brooks sent Ms. Evans a list of all 14 buildings that are located on the East Point Campus. (Exhibit 43 of Exhibit E, Pages 1 - 5).

22.

Ms. Evans called Ms. Brooks on April 27, 2018 to confirm that all the buildings would be utilized and occupied. During that telephone call, Ms. Brooks advised Ms. Evans that Braddy Preparatory was utilizing all 14 buildings at the East Point Campus that were included on the list. Ms. Evans was not aware that the buildings were not to be used as a school and were vacant. (Exhibit 41 of Exhibit E; Exhibit E, Page 41, Line 11 -25, Page 42, Line 1 – 12, Page 43, Lines 2 – 10, Page 52, Lines 5 - 7).

23.

During her assessment of the occupancy of the East Point Campus, Ms. Evans equated the term "utilize" with "occupy", which is commonly done by insurance agents when asking questions about occupancy. (Exhibit E, Page 44, Lines 6 - 11).

24.

On April 30, 2018, Ms. Evans continued her efforts to fashion coverage for the East Point Campus and submitted a Policy Change Request to Great American requesting the addition to the Policy of the remaining contiguous addresses (2517 Dodson Drive and 2640 Ben Hill Road, East Point, Georgia) and additional buildings located at the East Point. (Exhibit 44 of Exhibit E, Exhibit K, ¶ 5).

25.

Ms. Evans requested the addition of the remaining contiguous addresses and buildings without noting any change in her previous representations to Great American that the location where most of the buildings were located was being used and occupied as a school. (Exhibit 27 and Exhibit 44 of Exhibit E).

26.

Ms. Evans' requested business personal property coverage on each and every building, as well as business interruption coverage for the max amount, which was consistent with the representation that the buildings were occupied and in use as a school, with the necessary furniture and equipment, and not vacant. (Exhibit G, Page 23, Lines 3 - 9, Exhibit 44 of Exhibit E). Ms. Evans' request to cancel insurance coverage for Braddy Prep's location at 1706 Washington Ave. in the April 2, 2018 Policy Change Request was also consistent with Braddy Prep opening a school at the East Point Campus. (Exhibit 27 of Exhibit E, p. 1).

27.

Based on the communications of Ms. Evans and Braddy Prep, Mr. Cozatchy of Great American SHS was again prompted to conclude by the information in the

application that the locations and buildings at the East Point Campus were occupied, in use as a school, and not vacant. (Exhibit G, Page 22, Lines 16 – 25, Page 23, Lines 1 - 9; Exhibit H, Page 53, Line 25, Page 54, Lines 1 - 23).

28.

The request to add the remaining buildings and coverage, even though it resulted in an increase in premium, was not viewed as an atypical request by SHS and contained no red flags requiring that Braddy Prep complete a mid-term questionnaire, or as requiring SHS to question Ms. Evans about the veracity of her representations.  To the contrary, all information provided to Great American indicated that Braddy Prep was simply growing its operation while continuing to operate as a school, which SHS sees frequently. (Exhibit H, Pages 26, Lines 1 – 12, Page 27, Lines 7 – 25, Page 28, Lines 13 – 25, Page 29, Lines 1 – 4, Page 56, Lines 5 - 25; Exhibit G, Page 53, Lines 23 – 25, Page 1 - 14).

29.

SHS approved the April 30, 2018 Policy Change Request and coverage was bound. (Exhibit 72 of Exhibit H).

30.

11

Braddy Prep subsequently made a claim for damages to the East Point Campus based upon an alleged wind loss on or about August 2, 2018. (Exhibit 110 of Exhibit A, ¶ 8).

31.

Great American retained an engineering firm, ESI, who determined that most if not all the damage which they observed likely existed years before the alleged wind loss of August 2, 2018. ESI also observed extensive deferred maintenance and confirmed that there was no wind event around this time which was sufficient to cause the damages they observed. (Exhibit 101 of Exhibit I, Page 17).

32.

Prior to its investigation of that claim, Great American was not aware of any information, from Braddy Prep or otherwise, suggesting that there were any vacant buildings at East Point Campus. (Exhibit H, Page 32, Lines 3 - 10).

33.

During its investigation of the alleged wind claim, Great American learned that the vast majority of the East Point Campus was entirely vacant from the

inception of coverage on April 1, 2018 through the August 2, 2018 date of loss and beyond. (Exhibit J, Page 117, Lines 19 – 25, Page 118, Page 1 - 8).

34.

Additionally, and contrary to the representations of Ms. Brooks and Ms. Evans on the application and during the negotiation for insurance, Braddy Prep never used the East Point Campus to operate a private school prior to the August 2, 2018 date of loss. (Exhibit C, Page 25, Lines 9 - 20).

35.

The only building at the East Point Campus that was being used for any purpose when Braddy Prep obtained the license in April 2018 was the Gymnasium, which was not used by Braddy Prep as a school but by another entity called Fulton Leadership Academy, which had been using the Gymnasium before Braddy Prep obtained its license; however, Fulton Leadership Academy is not affiliated with Braddy Prep. (Exhibit J, Page 104, Lines 11 – 22, Page 107, Lines 2 – 4; Exhibit A, Page 25, Lines 16 – 22; Page 26, Lines 4 - 6).

36.

After Fulton Leadership Academy stopped its use of the Gymnasium in mid-summer of 2018, the Gymnasium was not used for any other purpose until Andrew Young YMCA hosted a summer program almost a year later, in 2019. (Exhibit J, Page 105, Lines 10 - 17; Exhibit A, Page 26, Lines 23 – 25, Page 27, Lines 15 – 25, Page 28, Lines 1 - 22).

37.

While Braddy Prep contends it allowed a political entity to use the Library, this activity did not occur until after the August 2, 2018 loss, and Braddy Prep never used the Library to conduct any school-related operations. (Exhibit J, Page 106, Lines 3 – 7; Page 107, Lines 2 - 4; Exhibit A, Pages 25, Lines 11 – 15, Page 177, Lines 8 - 12).

38.

Dr. Rodrick Frazier, the "steward" of the physical plant of the East Point Campus, spent time in the Library between April 1, 2018 and August 2, 2018, but he also never used the Library to conduct any school-related operations. Instead, Dr. Frazier's only job was to oversee the minor maintenance repairs to a limited number of buildings discussed in more detail below. (Exhibit J, Page 12, Line 16 – 20, Page 105, Lines 18 – 24, Page 107, Lines 2 – 4, Page 114, Lines 16 - 21).

14

39.

Neither Braddy Prep nor any other entity used the Administration Building

a/k/a Burns Hall for any purpose, school-related or otherwise. (Exhibit J, Page 108,

Lines 15 - 17).

40.

Braddy Prep never conducted any school-related operations at the single-

family residence on the East Point Campus, which was instead occupied by a

grounds person Kevin Peay who was not an employee of Braddy Prep. (Exhibit J,

Pages 106, Lines 20 – 23, Page 107, Lines 2 - 4; Exhibit C, Page 93, Lines 16 – 25,

Page 94, Lines 1 - 9).

41.

The remainder of the East Point Campus was unoccupied, unused, and

vacant from April 1, 2018 to August 2, 2018. (Exhibit J, Page 117, Lines 19 – 25,

Page 118, Page 1 - 8).

42.

The Policy issued to Braddy Prep by Great American, provides in pertinent

part:

15

*6. Vacancy*

*a. Description of Terms*

> *(1) As used in this Vacancy Condition, the term building and the term vacant have the meanings set forth in (1)(a) and (1)(b) below:*

> > *\*\*\*\*\*\*\**

> > *(b) When this Policy is issued to the owner or general lessee of a building, building means the entire building. Such building is vacant unless at least 31% of its total square footage is:*

> > > *(i) rented to a lessee or sub-lessee and used by the lessee or sub- lessee to conduct its customary operations; and/or*

> > > *(ii) used by the building owner to conduct customary operations.*

> *(2) Buildings under construction or renovation are not considered vacant.*

> *(3) Buildings where customary activities are suspended due to seasonal operations and the Business Personal Property has not been removed or the business personal property was moved to another building owned or occupied by the Named Insured at the same location during seasonal closing, are not considered vacant.*

(Doc. 1-1, Policy, Pages 58 - 59)

43.

The limited personal property at the East Point Campus prior to August 2,

2018 (including only desks and chairs in the Library, the Administrative Building,

16

and Main Building) was also insufficient to operate Braddy Prep and never used according to its CEO, Dr. Harrison Braddy. (Exhibit A, Page 16, Line 25, Page 17, Lines 1 – 16, Page 178, Lines 1 – 25, Page 179, Lines 1 – 25, Page 180, Lines 1 - 14).

### 44.

Although Braddy Prep conducted some maintenance repairs at the East Point Campus between April 1, 2018 and August 2, 2018, the repairs were only to the Gymnasium, the Library, and the Administration Building a/k/a Burns Hall, but no other buildings. (Exhibit J, Page 67, Lines 7 - 11).

### 45.

Witness testimony and documentation show that these maintenance repairs were minor, resulting at most in only occasional entry into three of the fourteen buildings at the East Point Campus, while the other buildings saw no maintenance activity at all. (Exhibit J, Pages 45, Lines 23 – 25, Page 47, Lines 7 – 22, Page 48, Lines 17 – 25, Page 49, Lines 1 – 11, 18 – 25, Page 50, Lines 1 – 6, Page 51, Lines 21 – 23, Page 57, Lines 20 – 25, Page 58, Lines 1 – 9, Page 60, Lines 3 – 5, Page 62, Lines 2 – 11, 12 – 25, Page 63, Lines 1 – 14, Page 67, Lines 7 – 11, Page 68, Lines 14 – 17; Exhibit A, Page 89, Lines 18 – 25, Page 90, Lines 1 – 4, 19 – 25,

Page 91, Lines 1, 9 – 11, 13 – 17, Page 92, Lines 1 – 11, 21 – 25, Page 93, Lines 1

– 20, Page 94, Lines 16 – 19, Page 95, Lines 3 – 5, 9 – 25; Page 157, Lines 1 - 10;

Exhibits 19 and 20 of Exhibit J).

46.

For example, the Administration Building was only entered approximately

once a week related to any maintenance repairs or assessments. (Exhibit J, Page

117, Lines 19 -25, Page 118, Lines 1 - 8).

47.

SHS focuses on coverage for schools and other non-profits, and under its

Confidential Underwriting Guide, "SHS is not in the market [to provide coverage]

for vacant buildings" in almost any circumstance.[1] The use, occupancy, and

vacancy of buildings are central issues evaluated by SHS underwriting when

deciding whether to provider coverage. Under the Guide, "[o]ccupancy refers to

how the building is being used for commercial property." Additionally, SHS

underwriting normally uses a stricter standard that the Policy's broader definition

of "vacancy" when evaluating vacant properties. (Exhibit F, Page 26, Lines 22 –

---

[1] Great American is not placing the Underwriting Guide (Exhibit 71 of Exhibit H) into the record at this time
pursuant to the Court's Confidentiality Order on Records (Doc. 44) but will submit if so instructed. The provisions
quoted are undisputed.

18

25, Page 27, Lines 1 – 6; Exhibit G, Page 10, Lines 8 – 11; Page 25, Lines 14 - 21;

Exhibit H, Page 31, Lines 23 – 25, Page 32, Lines 1 – 2; Exhibit 71 of Exhibit H,

Pages 2, 17; Exhibit K, ¶ 7).

48.

If an agent advises Great American that there is "an unoccupied or vacant

building [or] a partially occupied building" at a risk where coverage is sought,

SHS's Underwriting Guide directs the underwriter to "[r]equest that the agent

place coverage with another carrier," which Mr. Cozatchy would have done if Ms.

Evans' had advised that the buildings and locations were unoccupied or vacant.

(Exhibit 71 of Exhibit H, Page 17; Exhibit K, ¶ 7).

49.

SHS's Underwriting Guide applies when a school changes a location and

gets a new facility, which Ms. Brooks advised Ms. Evans that Braddy Prep was

doing. (Exhibit H, Page 70, Lines 11 - 15; Exhibit 23 from Exhibit E; Exhibit E,

Page 12, Lines 22 – 25, Page 13, Lines 1- 4).

50.

19

SHS underwriters also consider whether a building is and/or will be under construction prior to being occupied when determining whether to accept a risk. (Exhibit 71 of Exhibit H, Page 18; Exhibit H, Page 54, Lines 14 - 15).

51.

Braddy Prep never informed Great American that any of the buildings at the East Point Campus would be under construction, renovation, repair, or vacant prior to the alleged August 2, 2018 loss. To the contrary, it represented to Great American that the East Point Campus was occupied and used as a school. (Exhibit 27 and Exhibit 40 of Exhibit E; Exhibit H, Page 53, Line 25, Page 54, Lines 1 - 23).

52.

Ms. Evans knew that Great American's SHS was not in the market for vacant buildings, but in reliance upon Ms. Brooks' representations that the buildings at East Point Campus were being used as a school and occupied by Braddy Prep, Ms. Evans submitted the Policy Change Requests adding the East Point Campus while, unbeknownst to her, the East Point Campus was not being used as a school and was vacant. (Exhibit E, Page 43, Lines 5 – 10, Page 50, Lines

8 - 13; Exhibit J, Page 107, Lines 2 – 4, Page 117, Lines 19 – 25, Page 118, Lines 1 - 8).

### 53.

Had Great American known that the East Point Campus was vacant, unoccupied, or not being used by Braddy Prep to operate its private school, or that Braddy Prep had made any of the misrepresentations detailed above, it would not have issued coverage for the East Point Campus, regardless of vacancy or whether Braddy Prep had informed Great American of any future renovations or construction to the East Point Campus. (Exhibit K, ¶¶ 8, 9).

### 54.

In the aftermath of these revelations that the risk insured was very different from that which the Braddy Prep had represented, coupled with the investigation of the August 2 claim, including an engineer's opinion that most if not all the damage either pre-existed the coverage period of was not related to wind, Great American followed the procedure set forth under the Policy's Duties After Loss, and among other things, requested an examination under oath and Sworn Statement in Proof of Loss. (Exhibit 9 of Exhibit C, Pages 1 - 6).

55.

Braddy Prep declined to honor those Policy provisions, including what Judge Thrash agreed in his order denying Braddy Prep's Motion to Dismiss was "a 'blunt' refusal of [Great American's] request" for a Proof of Loss. (Doc. 51, Page 16).

56.

Great American then filed this Declaratory Judgment action seeking the Court's assistance in determining whether it may rescind the Policy due to Braddy's Prep's misrepresentation in the application and negotiations for insurance, and also whether any coverage is owed to Braddy Prep due to its refusal to cooperate during Great American's investigation. (Doc. 1, Complaint).

57.

Great American has deposited $74,490.42 to refund premiums previously paid by Braddy Prep into the registry of the Court pursuant to two court Orders granting Great American's Motions for permission to do so in anticipation of recession of the Policy. (Doc. 12, Doc. 68).

Respectfully submitted this 29th day of September, 2020.

DREW ECKL & FARNHAM, LLP

22

_/s/ H. Michael Bagley_
Georgia Bar No. 031425

_/s/ Paul A. Wildes_
Georgia Bar No. 449977

303 Peachtree Street NE
Suite 3500
Atlanta, GA  30308
Telephone: (404) 885-1400
Fax: (404) 876-0992
BagleyM@deflaw.com
WildesP@deflaw.com

Counsel for Defendants certifies that this pleading complies with Local Rule 5.1.  The type is Times New Roman, 14 point.

23